

# In the Missouri Court of Appeals
# Eastern District
### DIVISION FOUR

IN THE INTEREST OF:                    )     No. ED101743
V.C.N.C. & T.D.C.C.,                   )
                                       )
    Minor Children.             )     Appeal from the Circuit Court
                                       )     of St. Louis County
                                       )
                                       )     Honorable David Mason
                                       )
                                       )     FILED: March 10, 2015

    Van Courtney ("Father") and Tammy Harris ("Mother") (collectively, "Appellants")

appeal from the trial court's judgment terminating parental rights ("TPR") pursuant to Sections

244.447.5(1)-(3), RSMo (2014).[1]  Appellants argue that no clear, cogent, and convincing

evidence for termination exists on the record, that the trial court abused its discretion in denying

their motions for a continuance, and that the trial court improperly considered evidence that was

not before it.  We affirm.

### I.  Background

    V.C.N.C. and T.D.C.C. are twin girls born to Appellants in May 2010.  Both children

were taken into Children's Division protective custody on September 9, 2010, due to medical or

nutritional neglect, and on October 13, 2010, an adjudication and dispositional hearing was held

and found that Appellants could not provide the medical care the girls needed without the

---

[1] All further statutory references are to RSMo (2014) unless noted otherwise.

assistance of the Children's Division. Both girls have been in custody of the Children's Division of the Missouri Department of Social Services ("Children's Division") since September of 2010.

At the dispositional hearing in October of 2010, both parents were ordered to: have visitation with the girls at least semi-monthly; obtain and maintain financial stability or regular employment; obtain and maintain appropriate housing; submit to blood, breath, and urine testing upon request; enroll in and successfully complete family counseling; provide information on any relatives who may be fit, willing, and able to be caretaker of the girls; attend all medical appointments for the girls; and submit to a psychological evaluation with a parenting assessment, and comply with any recommended treatment. The record on appeal does not include any transcript of the October 13, 2010 hearing, nor does it include any petition or motion indicating why Appellants were ordered to comply with these conditions when the girls were taken into Children's Division custody due to the need for medical services that Appellants could not provide.

The Children's Division filed its TPR petition on October 17, 2013, alleging that Appellants had abandoned the children pursuant to Section 211.447.5(1), that Appellants had abused or neglected the children pursuant to Section 211.447.5(2), and that Appellants failed to rectify the conditions which led to assumption of jurisdiction by the court, pursuant to Section 211.447.5(3).

The trial was held on June 14, 2014. When the case was called by the Honorable David C. Mason in the morning, neither Mother nor Father was present in the courtroom, although their respective counsels were present and both made motions for continuance, which the trial court denied.

2

The trial court heard testimony from Erica Furrer, the twins' occupational therapist, and from Misty Jones, the twins' assigned case manager from Missouri Baptist Children's Home. Both Furrer and Jones testified that Mother and Father were involved and active in the twins' lives at first, but that both parents had become uninvolved, especially after a March 2012 family support team meeting. At that meeting, Mother and Father were asked to suggest relatives who could permanently adopt the twins. They suggested Father's aunt, and even signed consent forms for the children to be adopted by her, but that ultimately did not happen. After that meeting, Mother and Father "withdrew" and "stopped really communicating" with the Children's Division. Their visitation became nearly nonexistent, once going six months without seeing the twins, and Jones testified that after October 25, 2013, the parents had seen the children only three times.

Jones further testified that the parents had not attended a medical appointment for the twins since March of 2012. She said that Mother had submitted to only 30 of her 50 required drug screenings, testing positive for alcohol 14 times, and that Father had not submitted to any of his 24 required screenings.

Mother and Father both appeared in the courtroom after the lunch break, and their respective attorneys renewed their respective motions for a continuance, with the trial court denying both motions. Then, after four separate closing arguments, the trial court began to make his ruling, although he talked at length about how he reached his decision. During this extemporaneous discussion, the trial court discussed why Father had been absent from various visitations or appointments and said the following:

> I mean I hear about, well, he didn't make it to this and that, and then I'm seeing all
> these driving without the license charges. I can tell you why he didn't make it.
> His license was suspended, that's why. Public record, [Father's counsel],
> accessible to you or anyone in case you want it. I don't know why you didn't

3

know, quite frankly. A couple clicks of a button and you would know. But, you know, that's on you. You know, me, personally, I'd check out my client before I walk into court. But that's you, not me. As a Judge you better believe I check people out before I start moving kids around, and I'd tell anybody that I do that. It's a simple public record that's sitting right there. And that causes me some concern. Now you know 2010 was the last one but I'm looking for is there evidence of being responsible enough, because these kids have serious problems.

The trial court orally granted the TPR petition, and then published its Findings of Fact and Conclusions of Law, Judgment and Decree Terminating Parental Rights on June 24, 2014. These consolidated appeals follow.

## II. Discussion

For our review, we will consolidate Mother's and Father's points on appeal. Mother's points I, II, and III all claim that the trial court erred in terminating Mother's parental rights because its findings were not supported by clear, cogent, and convincing evidence. Father makes the same claim in his points I and II, so these five points will be addressed together. In Mother's point IV and Father's point III, Appellants argue the trial court abused its discretion in denying their motions for continuance as this decision was arbitrary and unreasonable. Father also argues the trial court further erred in considering evidence that was beyond the scope of evidence introduced by the parties at trial.

A. Standard of Review – Findings not supported by the evidence

Before proceeding to analysis of Appellants' arguments, we direct Appellants' attention to Missouri Supreme Court Rule 84.04, regarding requirements for the contents of briefs on appeal. Specifically, Rule 84.04(e) requires that the argument section of an appellant's brief "shall include a concise statement of the applicable standard of review for each claim of error." While both Appellants' briefs occasionally use language contained in the standards of review relevant here, nowhere in either of their briefs exists a "concise statement of the applicable standard of

4

review." Rule 84.04(e). "The standard of review is an essential portion of all appellate arguments; it outlines this court's role in disposing of the matter before us." Waller v. Shippey, 251 S.W.3d 403, 406 (Mo. App. W.D. 2008). "While it would be easy enough for this court to determine the applicable standard of review, it is not our duty to supplement the deficient brief with our own research." Id., citing Thummel v. King, 570 S.W.2d 679, 686 (Mo. banc 1978).

Five of Appellants' points relied on argue that the trial court erred in terminating Appellants' parental rights because, under the relevant statute, there was no clear, cogent, and convincing evidence that statutory grounds for termination existed. Not coincidentally, an appellate court's standard of review for a termination of parental rights is "whether clear, cogent, and convincing evidence was presented to support a statutory ground" for the termination "under Murphy v. Carron, 536 S.W.2d 30 (Mo. banc 1976)." In re Adoption of C.M.B.R., 332 S.W.3d 793, 815 (Mo. banc 2011). Therefore, we will affirm the trial court's judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law; we will only reverse if we are left with a firm belief that the order is wrong. Id. We find it particularly frustrating that Appellants were able to include language taken from the standard of review in their points relied on, but were still unable to then include a concise statement of the applicable standard in the body of the argument under each point. Due to this omission, we would be within our discretion to dismiss this appeal without even reaching the merits. In re Marriage of Fritz, 243 S.W.3d 484 (Mo. App. E.D. 2007); Citizens for Ground Water Protection v. Porter, 275 S.W.3d 219 (Mo. App. S.D. 2008); Waller v. Shippey, 251 S.W.3d 403 (Mo. App. W.D. 2008). However, to expedite proper resolution of this appeal, we will proceed to the merits of Appellants' points relied on.

Analysis – Findings not supported by the evidence

5

Mother argues in her first three points, and Father in his first two points, that the trial court erred in terminating their parental rights pursuant to Sections 211.447.5(1)-(3) because its findings were not supported by clear, cogent, and convincing evidence that statutory grounds for termination existed.

1. Abandonment

Section 211.447.5(1) provides the requirements for the court to find that a parent has abandoned a child. To constitute abandonment, the court must find that for a period of six months or longer, the parent has, "without good cause, left the child without any provision for parental support and without making arrangements to visit or communicate with the child, although able to do so." Section 211.447.5(1)(b). Abandonment can be defined as "'a willful delivery of the child with intention that the severance be permanent [or] a voluntary and intentional relinquishment of the custody of the child to another with the intent to never again claim the rights of parent or perform the duties of a parent.'" In re Adoption of C.M.B.R., 332 S.W.3d at 816, quoting In re Adoption of H.M.C., 11 S.W.3d 81, 87 (Mo. App. W.D. 2000). The question is largely the intent of the parents, and can be proven by showing the parents, without just cause or excuse, "'intentionally withheld [their] presence, care, love, protection, maintenance and the opportunity for display of filial affection from the child.'" In re Adoption of C.M.B.R., 332 S.W.3d at 816, quoting In re E.F.B.D., 245 S.W.3d 316, 327 (Mo. App. S.D. 2008). Generally, it is difficult to find abandonment when custody has ended involuntarily. In re Adoption of C.M.B.R., 332 S.W.3d at 816. However, the court may still find abandonment when "'a parent's lack of involvement goes beyond what is attributable to the estrangement and discouragement caused by the enforced separation.'" Id., quoting In re N.R.W., 112 S.W.3d 465, 469 (Mo. App. W.D. 2003).

Here, during the six months prior to the Children's Division filing its TPR petition, Mother visited the children one time, and Father did not visit them at all. Following the filing of the TPR petition in October of 2013, Appellants both visited the children four total times before trial in June of 2014. After March of 2012, neither parent attended a medical appointment with the children. Appellants argue that these contacts show that it was not their intent to abandon the children, while the trial court referred to these as "token visits." We agree with the trial court. "Parents are not allowed to maintain only a superficial or tenuous relationship with their children to avoid a determination of abandonment," and courts "may regard such efforts as token and terminate parental rights despite their existence." In re P.G.M., 149 S.W.3d 507, 514-15 (Mo. App. S.D. 2004). Further, at the March 2012 family support meeting, both parents signed consent forms for Father's aunt to adopt the children. "A willingness to voluntarily relinquish parental rights if a relative would receive custody demonstrates a desire contrary to the maintenance of a parental relationship." Id.

Ultimately, we find there was substantial evidence to support the trial court's finding that clear, cogent, and convincing evidence existed for termination of parental rights due to abandonment under Section 211.447(5)(1). Mother and Father's respective point I's are denied.

2. Abuse or Neglect

Section 211.447(5)(2) lists what the court must consider in determining whether a child has been abused or neglected. The court must consider and make findings on four conditions or acts: (1) a mental condition which renders the parent unable to knowingly provide the child the necessary care, custody and control; (2) a chemical dependency which prevents the parent from consistently providing the necessary care, custody and control, and which cannot be treated; (3) a severe act or recurrent acts of physical, emotional or sexual abuse; (4) repeated or continuous

7

failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education, or other care and control necessary for the child's development. Section 211.447(5)(2)(a)-(d).

The trial court concluded that both Mother and Father had no mental conditions, and neither had ever committed a severe or recurring act of abuse. It found that Father had no chemical dependency, but that Mother had a chemical dependency on alcohol, and that both parents had failed to provide the necessary care for their children.

Mother was requested to complete 50 drug screenings, submitted to only 30, and tested positive for alcohol 14 of those 30 times. She was referred to BASIC drug treatment, although she attended only sporadically and was discharged multiple times, with her positive tests occurring more frequently after her last discharge in January of 2012. We find substantial evidence was presented to support the trial court's finding that clear, cogent, and convincing evidence existed to support the trial court's determination that Mother had a chemical dependency on alcohol.

As to neglect, the same facts that support the finding that Appellants abandoned the children apply equally. Appellants both consistently failed to provide the children with adequate care, failing to visit the children regularly or even attend their medical appointments. Substantial evidence exists that clear, cogent and convincing evidence supports the trial court's termination of parental rights under Section 211.447.5(2). Mother's point II and Father's point II in part are denied.

3. Failure to Rectify

Section 211.447.5(3) addresses what constitutes a failure to rectify in the TPR context. The trial court must find that (1) the child has been in juvenile court jurisdiction for one year,

and (2) either (a) "that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist" with "little likelihood" that they will be remedied so the child can be returned, or (b) continuing the parent-child relationship would greatly diminish the child's prospects for early integration into a permanent, stable home. Section 211.447.5(3). The trial court must make findings on (1) the parents' compliance with their social plan, (2) the success or failure of the juvenile officers to aid the parents in adjusting to providing a proper home for a child, (3) any harmful mental conditions of the parents, and (4) any chemical dependency of the parents preventing them from consistently providing the necessary care. Id. The trial court found that Appellants had not complied with the social plan, the juvenile officers had little to no success in aiding the parents to adjusting to providing a proper home, and that Mother had an alcohol dependency.

One problem we have in reviewing this case is the lack of any motion, petition, or transcript from the October 2010 dispositional hearing. We do not know what the circumstances were that led to the twins being taken into Children's Division custody, other than that they needed medical care that Appellants could not provide without Children's Division's assistance. However, since no record of that hearing or the petitions that preceded it exists in the record, we cannot consider it. An appellate court "should not look beyond the record in examining sufficiency of evidence at trial." In re Adoption of C.M.B.R., 332 S.W.3d at 814.

"The ultimate issue when applying Section 211.447.5(3) is the continued existence of an unremedied, neglectful situation." In re G.G.B., 394 S.W.3d 457, 471 (Mo. App. E.D. 2013) (internal citations omitted). Here, both parents routinely broke their social plan, and Father did not even sign one. Appellants both failed to maintain consistent visitation with the twins or attend their medical appointments. The trial court also found that Mother had an alcohol

9

chemical dependency.  Thus, we find that clear, cogent, and convincing evidence exists in the record presented to us to support the trial court's finding of a failure to rectify.  Mother's point III and Father's point II in part are denied.

B.  Standard of Review – Denials of Motions for Continuance

In Mother's point IV, her final point, and part of Father's point III, Appellants argue that the trial court improperly denied their motions for a continuance.  We will review the denial of a motion for a continuance for an abuse of discretion by the trial court.  Id. at 464.  We will find an abuse of discretion only "in extreme cases where it clearly appears that the moving party is free from any dereliction," and the trial court's ruling was clearly against the logic of the circumstances and so unreasonable and arbitrary as to shock the sense of justice and indicate a lack of careful consideration.  Id.

1.  Analysis – Denials of Motions for Continuance

Rule 65.03 requires that a motion for a continuance "shall be made by a written motion . . . unless the adverse party consents that the application for continuance may be made orally."  Here, neither Appellant made any written motion for continuance, nor did they seek consent from Children's Division.  "Absent compliance with Rule 65.03, there can be no abuse of discretion in the denial of a continuance."  Id. at 466, citing In re P.D., 144 S.W.3d 907, 911 (Mo. App. E.D. 2004).  Even if Mother and Father had some justified reason for not attending the morning session of their TPR proceeding (and if they did, that reason was never proffered), the trial court's decision still would not constitute an abuse of discretion.  Mother's point IV and Father's point III in part are denied.

C.  Standard of Review – Judge Considering Evidence Beyond the Scope

In the second part of Father's point III, the final point for us to consider, he argues that the trial court erred and abused its discretion in its "extemporaneous remarks" after the close of all evidence. The trial judge made reference to Father's driving record and the fact that Father had a suspended license – facts that were apparently not presented by either party at trial. Again, Father does not put forth a clear standard of review as required by Rule 84.04(e), or even a clear statement as to the legal reasons for his claim of reversible error, as required by Rule 84.04(d)(1)(B). However, as this issue is important and unusual in nature, we will address Father's argument.

Ultimately, Father is arguing that an extrajudicial source resulted in the trial judge having a disqualifying prejudice. This occurs when the "extrajudicial source . . . results in the judge forming an opinion on the merits based on something other than what the judge has learned from participation in the case." In re C.H., 412 S.W.3d 375, 385 (Mo. App. E.D. 2013) (citing State v. Cella, 32 S.W.3d 114, 119 (Mo. banc 2000)). In In re C.H., the trial judge made remarks about considering race in his custody decision, about personalizing the case by comparing the child there to his own granddaughter, and about basing his decision upon his experience in other cases. 412 S.W. 3d at 385. The court there decided that "[e]xpressions of annoyance that are within the bounds of what imperfect men and women sometimes display do not create bias" and that the judge ultimately did not base his entire opinion on these few comments. Id. at 388. We find that what happened here is similar to In re C.H., in that a judge spoke about something he learned or experienced from outside the proceeding, and similar in that the trial judge did not base his entire decision on this improper comment. However, we cannot stress enough how important it is for trial judges to avoid performing their own investigation into the facts of a case, much less then state the results of that investigation during comments right before rendering a judgment. Had

11

this been a closer case on its merits, this breach of evidentiary rules and standard judicial practice may have been enough to reverse the trial court's decision. However, we ultimately agree with the trial judge that this ruling terminating parental rights is what was in the best interest of these twin girls, and thus Father's second part of point III is denied.

### III. Conclusion

For the foregoing reasons, the trial court's judgment is affirmed pursuant to Rule 84.16(b).

_____
ROY L. RICHTER, Judge

Patricia L. Cohen, P.J., concurs
Robert M. Clayton III, J., concurs

12