

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| ALMA J. CARRUTHERS, | ) | No. ED106837 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | |
| SERENITY MEMORIAL FUNERAL AND | ) | Honorable Barbara T. Peebles |
| CREMATION SERVICE, LLC, | ) | |
| | ) | |
| Appellant. | ) | Filed: June 4, 2019 |

## OPINION

Serenity Memorial Funeral and Cremation Service, LLC ("Serenity") appeals from the judgment of the trial court in favor of Alma J. Carruthers ("Ms. Carruthers") on her claim seeking to recover the money paid to Serenity for the cremation of her deceased son, Ricky Whitby, ("Decedent"). Serenity asserts one point on appeal, arguing the trial court erred in entering judgment in favor of Ms. Carruthers based on its conclusion that Serenity failed to turn over Decedent's cremated remains to Ms. Carruthers, as required by Section 194.350.[1] We reverse the judgment.

---

[1] All statutory references are to RSMo 2016.

Factual and Procedural Background

Ms. Carruthers is Decedent's mother. Secoy Webb ("Mr. Webb") is Decedent's son and Ms. Carruthers' grandson. In December of 2017, while Decedent was gravely ill, Ms. Carruthers purchased a funeral insurance policy for $1,795 through Serenity's "pre-need agent" to pay for Decedent's final arrangements. Ms. Carruthers also signed an authorization with Serenity indicating she was Decedent's next-of-kin or acting on behalf of the next-of-kin. Upon Decedent's death in January of 2018, Ms. Carruthers authorized Serenity "to take charge of the funeral arrangements for [Decedent]."

While Ms. Carruthers was meeting with Serenity to discuss the final arrangements for Decedent, Mr. Webb arrived at Serenity's office. Ms. Carruthers told Serenity Mr. Webb was Decedent's son, after which Serenity informed Ms. Carruthers that Mr. Webb had the legal right to decide how to dispose of Decedent's remains under Missouri's right of sepulcher statute, Section 194.119. While Ms. Carruthers wanted Decedent to have a cremation and a visitation, Mr. Webb wanted to have a funeral and burial because that is what Decedent would have wanted. Serenity informed Mr. Webb of the additional costs for a funeral and burial. Ms. Carruthers told Mr. Webb, if he wanted Decedent to be buried he would have to pay for it himself as she was not paying for a burial. Ms. Carruthers informed Serenity she would only allow the money from the insurance policy to be used for a visitation and cremation.

Mr. Webb was unable to come up with the additional money for a burial. He agreed to have Decedent cremated and signed a contract with Serenity. The contract was entitled "Statement of Funeral Goods and Services Selected." It provided that Serenity agreed to cremate Decedent, hold a visitation, and perform other related services in exchange for Mr. Webb's agreement to pay Serenity $1,795 and provide a guaranteed form of payment forty-eight hours

prior to the service. The contract was silent as to what Serenity should do with Decedent's remains after the visitation.

Serenity received the funds from Ms. Carruthers' insurance policy to pay for Decedent's cremation and performed the services provided for in the contract with Mr. Webb. Afterwards, Ms. Carruthers went to collect Decedent's remains and Serenity informed her that Mr. Webb had already collected the remains.

Ms. Carruthers filed a petition against Serenity in small claims court, seeking recovery of the $1,795 she paid Serenity, arguing she was entitled to get her money back because Serenity did not provide her with Decedent's remains, which she was entitled to as the person who paid for Decedent's final arrangements. The court entered judgment in favor of Serenity. Ms. Carruthers filed a petition for trial *de novo* in the circuit court. Following a bench trial, the circuit court entered judgment in favor of Ms. Carruthers and ordered Serenity to pay Ms. Carruthers $1,795 in damages, plus costs. This appeal follows.

<u>Discussion</u>

## I.      Compliance with Mandatory Briefing Requirements of Rule 84.04

Before proceeding to the analysis of Serenity's arguments, we direct Serenity's attention to Missouri Supreme Court Rule 84.04 (2018),[2] which sets forth requirements for the contents of appellate briefs.

Rule 84.04(e) requires appellants to include in their argument for each claim of error "a concise statement describing whether the error was preserved for appellate review; if so, how it was preserved; and the applicable standard of review." Rule 84.04(e), *see In re V.C.N.C. & T.D.C.C.*, 458 S.W.3d 443, 450 (Mo. App. E.D. 2015). Serenity's appellant brief fails to comply

---

[2] All rule references are to Missouri Supreme Court Rules (2018).

with Rule 84.04(e) because it neither describes how its claim of error was preserved for appellate review, nor states the applicable standard of review. Either deficiency would be grounds for us to dismiss Serenity's appeal because the failure to comply with Rule 84.04(e) "preserves nothing for appellate review." *Fritz v. Fritz (In re Fritz)*, 243 S.W.3d 484, 487 (Mo. App. E.D. 2007). "While it would be easy enough for this court to determine the applicable standard of review, it is not our duty to supplement the deficient brief with our own research." *In re V.C.N.C. & T.D.C.C.*, 458 S.W.3d at 447 ("The standard of review is an essential portion of all appellate arguments; it outlines this court's role in disposing of the matter before us."). Neither is it our job to "comb the record" in search of facts to support Serenity's claim of error or demonstrate it is properly preserved for appellate review. *See Wong v. Wong*, 391 S.W.3d 917, 919-20 (Mo. App. E.D. 2013); *Bramer v. Abston*, 553 S.W.3d 872, 879 (Mo. App. S.D. 2018) (an appellant's failure to "ascertain the preservation status" of his or her claims and "present argument in conformance with the applicable standard of review[] drastically undercuts the efficacy" of appellant's arguments).

Rule 84.04(d)(5) requires appellants to "include a list of cases, not to exceed four, and the constitutional, statutory, and regulatory provisions or other authority upon which that party principally relies." Serenity's brief fails to comply with Rule 84.04(d)(5) in that it does not cite any appropriate precedent to support its claims of error. *See Brown v. Ameristar Casino Kan. City, Inc.*, 211 S.W.3d 145, 147-48 (Mo. App. W.D. 2007). The only legal citations in Serenity's entire brief are two statutes. Although Serenity cites the relevant statutes, Serenity fails to cite any cases supporting its arguments. "[A]n appellant must cite legal authority to support his points relied on if the point is one in which precedent is appropriate or available; if no authority is available, an explanation should be made for the absence of citations." *In re Fritz*, 243 S.W.3d

4

at 488. "Failure to cite relevant authority supporting the point or to explain the failure to do so preserves nothing for review." *Id*; *Pennington-Thurman v. Bank of Am., N.A.*, 486 S.W.3d 471, 479 (Mo. App. E.D. 2016).

The briefing requirements of Rule 84.04 are mandatory, and the failure to substantially comply with Rule 84.04 preserves nothing for review. *Brown*, 211 S.W.3d at 147. Although we have discretion to dismiss an appeal for briefing deficiencies, "[t]hat discretion is generally not exercised unless the deficiency impedes disposition on the merits" because we "prefer[] to resolve an appeal on the merits of the case rather than to dismiss an appeal for deficiencies in the brief." *Guthrie v. Mo. DOL & Indus. Rel.*, 503 S.W.3d 261, 266 (Mo. App. W.D. 2016). Accordingly, we have discretion to review noncompliant briefs *ex gratia* "where the argument is readily understandable." *See Scott v. King*, 510 S.W.3d 887, 892 (Mo. App. E.D. 2017).

Here, we decline to exercise our discretion to dismiss Serenity's appeal because its argument is "readily understandable" and the failure to follow the briefing guidelines does not impede our ability to address the merits of Serenity's claim. *See Scott*, 510 S.W.3d at 892; *Brown v. Hamid*, 856 S.W.2d 51, 53 (Mo. banc 1993). Therefore, we are able to resolve this appeal without improperly becoming an advocate. *See Brown*, 211 S.W.3d at 147 (purpose of Rule 84.04 is to "ensure that appellate courts do not become advocates by speculating on facts and arguments that have not been made"). "But we cautiously exercise this discretion because each time we review a noncompliant brief *ex gratia*, we send an implicit message that substandard briefing is acceptable. It is not." *Scott*, 510 S.W.3d at 892.

## II.    Section 194.350(3) Authorized Serenity to Deliver Decedent's Remains to Mr. Webb, as the Person who Contracted for the Cremation.

In its sole point on appeal, Serenity argues the trial court erred in entering judgment in favor of Ms. Carruthers on her claim to recover money paid for Decedent's cremation in that

5

"[Ms. Carruthers] specifically agreed to and authorized Serenity to apply the funds for the cremation and visitation performed by Serenity and, further, [Ms. Carruthers] knowingly and willingly acquiesced in [Mr. Webb], a surviving child of [Decedent], contracting with Serenity for the disposition of [Decedent]'s body by cremation with a visitation utilizing the funds prepaid by [Ms. Carruthers] for same pursuant to a 'pre-need' contract after [Mr. Webb], who was willing to assume responsibility for disposition of [Decedent]'s remains, ultimately failed to produce funds for said disposition."

Our standard of review in a judge-tried case is governed by *Murphy v. Carron*. *Declue v. McCann*, 463 S.W.3d 792, 795-96 (Mo. App. E.D. 2015) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). We will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id*. We defer to the trial court's determinations of credibility and view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the judgment. *Id*.

The trial court concluded that "based upon Section 194.350 RSMo, Plaintiff . . . was entitled to delivery of the cremated remains of [Decedent], in that she had contracted for the cremation, and not the next-of-kin, the decedent's son." The court also concluded that, Serenity did not lawfully deliver the cremated remains to Mr. Webb as the next-of-kin under Section 194.119 because Mr. Webb did not assume financial responsibility for the disposition of the remains. The court further noted that "[a]lthough [Mr. Webb] sought to enter financial arrangement for said cost, he did so to no avail, and [Serenity] used [Ms. Carruthers'] funds to satisfy the final obligation."

Serenity argues the trial court's conclusion that Ms. Carruthers contracted for the cremation was not supported by the evidence because Mr. Webb signed the cremation contract, not Ms. Carruthers. Serenity further argues the trial court erroneously declared and applied the law in concluding Mr. Webb was not the next-of-kin under Section 194.119 because he did not actually pay the costs of Decedent's cremation. We agree with both arguments, however we find the first argument is dispositive.

Under Section 194.350, Serenity, as the "licensed funeral establishment" that cremated Decedent, was authorized to dispose of Decedent's remains in one of several statutorily-proscribed ways. Relevant to this case, Section 194.350 authorized Serenity to "deliver[] the remains to or as directed by the person who contracted for the cremation." The question of whether Mr. Webb entered into a contract with Serenity for the cremation of Decedent is governed by contract law. Three elements are required to form a valid and enforceable contract: offer, acceptance, and consideration. *Walker v. Rogers*, 182 S.W.3d 761, 767 (Mo. App. W.D. 2006). We find the "Statement of Funeral Goods and Services Selected" constituted a contract for the cremation of Decedent between Serenity and Mr. Webb because it satisfied all elements of a valid contract. This document reflects that Serenity offered to cremate Decedent's remains and perform other related services, Mr. Webb accepted this offer by signing the agreement, and the consideration was Mr. Webb's promise to pay Serenity $1,795 for its services. Therefore, Section 194.350 expressly authorized Serenity to deliver Decedent's remains to Mr. Webb, as the "person who contracted for the cremation."

Ms. Carruthers was not a party to the contract between Serenity and Mr. Webb. We acknowledge that, prior to Decedent's death, Ms. Carruthers purchased a funeral insurance policy for Decedent and discussed arrangements with Serenity to cremate Decedent. However,

7

there is no evidence in the record that either the insurance application or Ms. Carruthers' discussions with Serenity culminated in any contract between Ms. Carruthers and Serenity. The insurance application indicates that the insurer was "CFL, a subsidiary of Catholic Holy Family Society," and nothing in the document obligated Ms. Carruthers to use the insurance proceeds to pay Serenity to cremate Decedent. The application cannot qualify as a contract to cremate Decedent between Ms. Carruthers and Serenity for two reason. First, Serenity was not a party to the insurance policy, but merely the agent who sold the policy to Ms. Carruthers. Second, none of the terms of the insurance application dealt with the cremation of Decedent's remains by Serenity. Accordingly, nothing in the insurance application supports a conclusion that Ms. Carruthers was the "person who contracted for the cremation" under Section 194.350.

Additionally, nothing in the record before us supports the trial court's conclusion that Ms. Carruthers entered into a contract with Serenity to cremate Decedent. Although Serenity offered its cremation services to Ms. Carruthers during preliminary discussions while Decedent was still alive, these discussions did not constitute a valid contract because Ms. Carruthers neither accepted this offer nor provided any consideration to Serenity at that time. Rather, Ms. Carruthers and Serenity expected to finalize the arrangements upon Decedent's death. However, before any contract could be signed, Serenity learned that Ms. Carruthers did not have the superior claim as next-of-kin pursuant to Section 194.191.2 because Decedent was survived by Mr. Webb. Upon learning this fact, Serenity determined that Mr. Webb had a superior right of sepulcher under Section 194.119.2, meaning he had "the right to choose and control the burial, cremation, or other final disposition of" Decedent. Section 194.119.1 Accordingly, Serenity informed Ms. Carruthers that Mr. Webb had the right to decide how to dispose of Decedent's remains. Serenity then entered into a contract with Mr. Webb.

8

While the fact that Serenity signed a contract with Mr. Webb is dispositive, we also agree with Serenity that Mr. Webb's claim as Decedent's next-of-kin was superior to Ms. Carruthers' claim. Under Section 194.119.2, a surviving child has priority over a surviving parent, and Mr. Webb met all the statutory criteria required to qualify as a next of kin in that he was (1) "eighteen years of age or older," (2) "mentally competent," and (3) "willing to assume responsibility for the costs of disposition" of Decedent's remains. The trial court's conclusion that Mr. Webb was not entitled to Decedent's remains as the next-of-kin because he did not actually pay the cost of the cremation out of his own pocket is an erroneous application of the law. Section 194.119.2 only requires the next-of-kin to be "willing to assume responsibility for the costs of disposition," which Mr. Webb demonstrated by signing a contract in which he agreed to pay Serenity for the cremation. Who ultimately gave Serenity the money to actually pay for the costs of Decedent's cremation is not relevant under Section 194.119.2.

For the aforementioned reasons, we find the trial court erred in concluding Ms. Carruthers was entitled to a refund of the money she paid Serenity for the cremation services provided to Decedent. Point I is granted.

Conclusion

The judgment of the trial court in favor of Ms. Carruthers is reversed, and judgment is entered in favor of Serenity.

_____
Angela T. Quigless, J.

Roy L. Richter, P.J., and
Robert M. Clayton III, J., concur.

9