In the Missouri Court of Appeals
 Eastern District
 DIVISION ONE
MICHAEL A. LEXOW, ) No. ED108853
 )
 Claimant/Appellant, ) Appeal from the Labor and
 ) Industrial Relations Commission
 vs. )
 )
BOEING CO., )
 )
 Employer, )
 )
 and )
 )
TREASURER OF MISSOURI AS )
CUSTODIAN OF THE SECOND INJURY )
FUND, )
 )
 Respondent. ) Filed: May 11, 2021

 OPINION

 Michael A. Lexow (“Claimant”) appeals the decision of the Labor and Industrial

Relations Commission (the “Commission”) reversing the award of the Administrative Law Judge

(the “ALJ”) and denying him permanent total disability (“PTD”) benefits.1 Claimant raises three

1
 We note that Claimant’s appellate brief violates Rule 84.04 in multiple respects. Notably, Claimant’s points relied
on do not comply with the requirements and format of Rule 84.04(d)(2), which requires an appellant to “identify the
administrative ruling or action the appellant challenges, provide a concise statement of the legal reasons for the
claim on appeal, and explain why the legal reasons support the claim of error.” Johnson v. Buffalo Lodging
Associates, 300 S.W.3d 580, 582 (Mo. App. E.D. 2009). In addition, Rule 84.04(c) provides that “[a]ll statements of
facts shall have specific page references to the relevant portion of the record on appeal, i.e., legal file, transcript, or
exhibits.” Similarly Rule 84.04(e), provides that “[a]ll factual assertions in the argument shall have specific page
references to the relevant portion of the record on appeal[.]” Claimant fails to consistently cite to the record in his

 1
points on appeal. In his first point, Claimant argues the Commission erred in reversing the ALJ’s

award on the grounds that Claimant failed to meet his burden under § 287.220.3 because the

expert witnesses considered non-qualifying disabilities in forming their opinions when there was

substantial and competent evidence that Claimant was permanently and totally disabled even if

non-qualifying disabilities were excluded.2 In his second point, Claimant argues the Commission

misinterpreted and misapplied § 287.220.3 because the statutory language and framework allows

for PTD benefits as a result of the combination of his primary injury and non-qualifying

preexisting disabilities. Lastly, in his third point, Claimant argues the Commission erred in

failing to consider his 2003 workers’ compensation claim, involving an occupational disease that

resulted from repetitive trauma, as a qualifying disability under § 287.220.3. We reverse and

remand.

 I. Factual and Procedural Background

 Claimant is a 61-year-old male who attended a technical college and earned a certificate

in aircraft maintenance, which permits him to inspect, repair, and maintain aircraft. Claimant

served in the United States Air Force, where he performed aircraft and jet engine maintenance

from 1976 to 1979. He was honorably discharged with no service-connected disability. After

leaving the Air Force, Claimant was employed by four different employers to maintain and

repair aircraft and aircraft equipment.

 In 2003, Claimant developed bilateral carpal tunnel syndrome (“CTS”) as a result of

repetitive work he performed for his employer at the time. In 2004, he underwent bilateral carpal

statement of facts and in the argument portion of his brief. Although we have the discretion to dismiss an appeal for
briefing deficiencies, we generally do not exercise that discretion unless the deficiency impedes disposition on the
merits because we prefer to resolve an appeal on the merits of the case rather than to dismiss an appeal for failure to
comply with Rule 84.04. Carruthers v. Serenity Mem’l Funeral & Cremation Serv., LLC, 576 S.W.3d 301, 305 (Mo.
App. E.D. 2019). Despite Claimant’s failure to comply with Rule 84.04, we exercise our discretion to review his
appeal ex gratia because his argument is readily understandable. See id.
2
 All references are to Mo. Rev. Stat. Cum. Supp. 2016, unless otherwise stated.

 2
tunnel release surgeries. Claimant continued to experience weakness and had limited endurance

and dexterity. Claimant settled with his then-current employer for 17.5% permanent partial

disability (“PPD”) of the left wrist, 18.6% PPD of the right wrist, and a 10% load or multiplicity

factor was applied.

 Claimant began his employment with Boeing Company (“Employer”) in October of 2008

and served as an aircraft simulation technician. His position was physically demanding, requiring

heavy lifting, hand-intense activities, extended kneeling and squatting, use of multiple hand

tools, and overhead work. After working for Employer for seven years, Claimant developed

increasing numbness and tingling in his dominant left arm and hand in November of 2015. In

April of 2016, Claimant was diagnosed with left CTS. Claimant filed a workers’ compensation

claim against Employer after being diagnosed, which was settled for 17.5% PPD of the left wrist

(“primary injury”). In addition, Claimant filed a claim against the Second Injury Fund (the

“Fund”) alleging that he is permanently and totally disabled as a result of the combination of his

numerous preexisting conditions and his primary injury sustained while working for Employer.

Claimant’s preexisting conditions include injuries to his right shoulder, left shoulder, left biceps,

left and right wrists (bilateral CTS), left knee, low back, neck, heels, and eyesight.

 The claim against the Fund was heard before the ALJ on March 14, 2019. On June 29,

2019, the ALJ issued her award ruling in favor of Claimant, finding “Claimant is permanently

and totally disabled due to the combination of his primary and preexisting injuries and

disabilities.” The Fund timely filed an appeal of the award with the Commission.

 The issue before the Commission was whether all of Claimant’s claimed preexisting

disabling conditions, including those that do not satisfy § 287.220.3(2)(a)a, could be considered

in determining Claimant’s eligibility for PTD benefits under the amended statute. On March 20,

 3
2020, in a two-to-one decision, the Commission reversed the ALJ’s award and found that

Claimant’s evidence failed to satisfy the standard set forth in § 287.220.3.

 The Commission reviewed Claimant’s preexisting conditions and rendered a finding as to

each of his preexisting conditions: 50% (116 weeks) PPD of the right shoulder; 15% (34.8

weeks) PPD of the left shoulder; 15% (33.3 weeks) PPD of the left bicep; 18.6% (32.55 weeks)

PPD of the right wrist and 17.5% (30.625 weeks) PPD of the left wrist (bilateral CTS); 55% (88

weeks) PPD of the left knee; 20% (80 weeks) PPD of the low back; 30% (120 weeks) PPD of the

neck; 3.5% (at the 150-week level or 5.25 weeks) PPD of the plantar fasciitis (heel) of each foot;

and found no preexisting PPD referable to his vision. As to the primary injury, the Commission

found that Claimant suffered 17.5% PPD of the left wrist.

 The Commission summarized that Claimant believes he remains incapable of returning to

or sustaining work in the open labor market owing to his bilateral shoulder, bilateral hand, back,

neck, left knee, and feet problems. In his deposition testimony, Claimant’s medical expert, Dr.

David Volarich (“Dr. Volarich”), opined that Claimant was permanently and totally disabled as a

result of the primary injury in combination with his preexisting 2003 bilateral CTS, right

shoulder, left shoulder, left knee, left bicep, bilateral heels, low back, and neck disabilities. Dr.

Volarich made clear that his opinion that Claimant is permanently and totally disabled was

formed with consideration of his numerous aforementioned preexisting conditions. Ms. Delores

Gonzalez (“Ms. Gonzalez”), the vocational rehabilitation counselor, opined Claimant is not

currently capable of any competitive work for which there is a reasonably stable job market due

to the combination of the effects of his primary injury and his preexisting conditions. Like Dr.

Volarich, Ms. Gonzalez also factored in Claimant’s aforementioned preexisting conditions into

her vocational opinion.

 4
 In strictly construing § 287.220.3, the Commission’s majority concluded that, in order to

satisfy the new amended statutory test, a claimant must prove that his or her permanent total

disability results from a combination of the primary injury and a single, preexisting disability

that meets the 50-week threshold and categorical criteria under § 287.220.3(2)(a)a. The

Commission also concluded that “it is necessary to identify, with specificity, which of an

employee’s identified preexisting disabling conditions are claimed to combine with the primary

injury to render the employee permanently and totally disabled” because otherwise it “would be

permitted to include all identified preexisting disabilities in our analysis, without regard to

whether they individually satisfy the enumerated criteria under § 287.220.3[(2)](a)a.”

 In applying the statute to Claimant’s case, the Commission found that Claimant’s

preexisting right shoulder, left knee, low back, and neck injuries were the only conditions that

satisfied the 50-week threshold under § 287.220.3(2)(a)a. However, the Commission found that

there was no evidence showing Claimant “is unable to compete for work in the open labor

market owing to the effects of the primary left CTS injury in combination with only his

preexisting disabling right shoulder, neck, low back, or left knee conditions.” (Emphasis in

original). Therefore, the Commission held Claimant failed to establish that he was permanently

and totally disabled as a result of a combination of the effect of his primary injury and a single,

qualifying preexisting disability.3

3
 One member of the Commission dissented, stating that Claimant met his burden of proving his entitlement to PTD
benefits. The dissent reasoned that:

 [W]here an employee has multiple preexisting disabling conditions that satisfy the new 50-week
 threshold and categorical criteria under § 287.220.3[(2)](a)a, I am not prevented from considering
 the employee’s other, less serious preexisting disabling conditions in assessing whether the
 employee is permanently and totally disabled, no more than I am prevented from considering these
 other factors that bear upon their ability to compete for and secure work in the open labor market.

 5
 This appeal follows.

 II. Standard of Review

 Pursuant to article V, section 18 of the Missouri Constitution, our review of the

Commission’s decision is to determine whether it is “supported by competent and substantial

evidence upon the whole record.” Mo. Const. art. V, § 18. Additionally, § 287.495.1 provides

that this Court:

 [S]hall review only questions of law and may modify, reverse, remand for
 rehearing, or set aside the award upon any of the following grounds and no other:

 (1) That the commission acted without or in excess of its powers;
 (2) That the award was procured by fraud;
 (3) That the facts found by the commission do not support the award;
 (4) That there was not sufficient competent evidence in the record to warrant the
 making of the award.

 We review the findings of the Commission and not those of the ALJ; in doing so, we

defer to the Commission’s findings as to weight and credibility of testimony and are bound by its

factual determinations. Patterson v. Cent. Freight Lines, 452 S.W.3d 759, 764 (Mo. App. E.D.

2015). “The Commission’s findings will not be disturbed unless they are unsupported by

competent and substantial evidence on the whole record.” Thompson v. Treasurer of Missouri,

545 S.W.3d 890, 893 (Mo. App. E.D. 2018). “In reviewing the Commission’s decision, we view

the evidence objectively and are not required to ‘view the evidence and all reasonable inferences

drawn therefrom in the light most favorable to the award.’” Harris v. Ralls County, 588 S.W.3d

579, 594 (Mo. App. E.D. 2019) (quoting Wilson v. Progressive Waste Sols. of Mo., Inc., 515

S.W.3d 804, 807 (Mo. App. E.D. 2017)).

We note that the parties do not address in this appeal whether any consideration should be given to those “other
factors,” including an employee’s age, employment history, educational history, potential for retraining, and
physical limitations, when determining the employee’s ability to be employed in the open market.

 6
 Although we defer to the Commission on issues concerning credibility and the weight

given to conflicting evidence, we independently review the Commission’s interpretation and

application of the law de novo without deference to the Commission’s findings. Thompson, 545

S.W.3d at 893; Williams v. Treasurer of Missouri, 598 S.W.3d 180, 186 (Mo. App. E.D. 2020).

Reversal on the basis that the Commission’s award is unsupported by sufficient competent

evidence is warranted only in rare cases. Schlereth v. Aramark Unif. Services, Inc., 589 S.W.3d

645, 651 (Mo. App. E.D. 2019).

 III. Discussion

Points I and II
 In his first and second point on appeal, Claimant’s arguments center upon the

Commission’s interpretation and application of § 287.220; therefore, for continuity purposes, we

review Points I and II together. In his first point on appeal, Claimant argues the Commission

erred in reversing the ALJ’s award on the grounds that Claimant failed to meet his burden under

§ 287.220.3. Specifically, Claimant argues that although the expert witnesses considered non-

qualifying disabilities in forming their opinions, there was substantial and competent evidence

that Claimant was permanently and totally disabled even if non-qualifying disabilities were

excluded. In his second point on appeal, Claimant argues the Commission misinterpreted and

misapplied § 287.220.3 because the statutory language and framework provides for PTD benefits

as a result of the combination of the primary injury and all of his preexisting disabilities,

including his non-qualifying preexisting disabilities.

 Analysis

 Section 287.220 established the Second Injury Fund and it “imposes liability on the Fund

in certain cases of permanent disability where there is a preexisting disability.” Hazeltine v.

Second Injury Fund, 591 S.W.3d 45, 56 (Mo. App. E.D. 2019). The Fund was created with the

 7
purpose to “encourage the employment of individuals who are already disabled from a

pre[]existing injury, regardless of the type or cause of that injury.” Id. (quoting Glasco v.

Treasurer of State-Custodian of Second Injury Fund, 534 S.W.3d 391, 397 (Mo. App. W.D.

2017)).

 The General Assembly amended § 287.220 in 2013 to limit the number of workers

eligible for benefits because the Fund was insolvent. See Dubuc v. Treasurer of State - Custodian

of Second Injury Fund, 597 S.W.3d 372, 377 (Mo. App. W.D. 2020); see also Cosby v.

Treasurer of State, 579 S.W.3d 202, 210 (Mo. banc 2019). The amended statute provides two

subsections to determine Fund liability for PPD or PTD benefits. Subsection 2 applies to all PPD

or PTD claims against the Fund for injuries occurring before January 1, 2014. Cosby, 579

S.W.3d at 207. Subsection 3 eliminated claims for PPD and limited PTD claims against the Fund

to injuries that occurred after January 1, 2014. Id. at 207–08. “The standards for determining the

Fund’s liability for permanent partial and permanent total disability benefits vary depending on

which subsection applies.” Dubuc, 597 S.W.3d at 378.

 Claimant’s primary injury that precipitated his PTD claim against the Fund occurred after

2014; therefore, the Commission correctly applied § 287.220.3. See Cosby 579 S.W.3d at 207.

Section 287.220.3 provides, in relevant part:

 3. (1) All claims against the second injury fund for injuries occurring after January
 1, 2014, and all claims against the second injury fund involving a subsequent
 compensable injury which is an occupational disease filed after January 1, 2014,
 shall be compensated as provided in this subsection.

 (2) No claims for permanent partial disability occurring after January 1, 2014, shall
 be filed against the second injury fund. Claims for permanent total disability under
 section 287.200 against the second injury fund shall be compensable only when the
 following conditions are met:

 8
 (a) a. An employee has a medically documented preexisting disability equaling a
 minimum of fifty weeks of permanent partial disability compensation according to
 the medical standards that are used in determining such compensation which is:
 (i) A direct result of active military duty in any branch of the United States Armed
 Forces; or
 (ii) A direct result of a compensable injury as defined in section 287.020; or
 (iii) Not a compensable injury, but such preexisting disability directly and
 significantly aggravates or accelerates the subsequent work-related injury and shall
 not include unrelated preexisting injuries or conditions that do not aggravate or
 accelerate the subsequent work-related injury; or
 (iv) A preexisting permanent partial disability of an extremity, loss of eyesight in
 one eye, or loss of hearing in one ear, when there is a subsequent compensable
 work-related injury as set forth in subparagraph b of the opposite extremity, loss of
 eyesight in the other eye, or loss of hearing in the other ear; and

 b. Such employee thereafter sustains a subsequent compensable work-related
 injury4 that, when combined with the preexisting disability, as set forth in items (i),
 (ii), (iii), or (iv) of subparagraph a. of this paragraph, results in a permanent total
 disability as defined under this chapter....

 Here, the Commission found four of Claimant’s preexisting disabilities—his right

shoulder, left knee, low back, and neck—satisfied § 287.220.3(2)(a)a because each documented

preexisting disability individually equaled a minimum of 50 weeks of PPD; however, the

Commission concluded Claimant failed to satisfy § 287.220.3(2)(a)b because he failed to prove

that he is permanently and totally disabled as a result of the combination of the primary injury

and a single, preexisting disability that meets the 50-week and categorical criteria of §

287.220.3(2)(a)a. Claimant does not contest the Commission’s findings pertaining to the four

above-mentioned preexisting conditions that met the 50-week threshold; rather, he argues he

demonstrated that the preexisting disabilities that met the 50-week threshold also satisfied one of

the four categories set forth in § 287.220.3(2)(a)a(i)-(iv)5 and he is permanently and totally

4
 We use the term “primary injury” to refer to “subsequent compensable work-related injury” throughout this
Opinion.
5
 Claimant argues that he met his burden of establishing that his four preexisting disabilities that met the 50-week
threshold also satisfied one of the four categories set forth in § 287.220.3(2)(a)a(i)-(iv) and supports his argument by
outlining the evidence he believes satisfies the categorical criteria. However, the Commission did not make any
specific findings as to which category it evaluated the four preexisting conditions under. Because we can only

 9
disabled because of the combination of his primary injury and all of his preexisting disabilities.

At the center of Claimant’s argument is the Commission’s interpretation of § 287.220.3 and

which injuries ought to be considered in determining whether Claimant is entitled to PTD

benefits.

 Section 287.220.3(2)(a)b provides that an employee must show that he or she is

permanently and totally disabled as a result of the combination of the primary injury and “the

preexisting disability, as set forth in items (i), (ii), (iii), or (iv) of subparagraph a. of this

paragraph….” 6 (Emphasis added). The Supreme Court of Missouri clarified in Treasurer of

State v. Parker, 2021 WL 1554726, at *3 (Mo. banc Apr. 20, 2021), that although §

287.220.3(2)(a)b refers to “the preexisting disability” in the singular form, § 1.030 instructs that

the singular form should be interpreted to include the plural form. Therefore, § 287.220.3(2)(a)b

should be read as “when combined with the preexisting disabilities.” Id. (Emphasis added). In

determining which preexisting conditions should be considerd under subparagraph b, the

Supreme Court explained that:

 By specifying that the preexisting disability must qualify under one of the four
 eligibility criteria in the first condition, the legislature excluded disabilities that are
 not the primary injury and that do not qualify under the first condition from being
 considered when determining if the claimant meets the second condition.
 Therefore, an employee satisfies the second condition by showing the primary
 injury results in PTD when combined with all preexisting disabilities that qualify
 under one of the four eligibility criteria listed in the first condition.

Id.

review findings and decisions made by the Commission, we do not address Claimant’s argument. See Treasurer of
State v. Parker, 2021 WL 1554726, at *4 (Mo. banc Apr. 20, 2021).
6
 Claimant relies on the Supreme Court’s interpretation of the then-effective version of § 287.220 in Second Injury
Fund v. Witte, 414 S.W.3d 455 (Mo. banc 2013). However, because Witte predates the 2013 amendments, it no
longer applies to cases that are reviewed under the current version of the statute. See Parker, 2021 WL 1554726, at
*3 n.4.

 10
 Thus, the Commission misinterpreted § 287.220.3 and erred in finding that an “employee

must prove PTD resulting from the combination of the primary injury and a single, qualifying

preexisting disabling condition, in order to receive permanent total disability benefits from the

Second Injury Fund under the new statutory test.” Accordingly, we remand to the Commission

with instructions to make factual findings as to which of Claimant’s preexisting conditions

qualify under one of the four eligibility criteria listed in § 287.220.3(2)(a)a and apply §

287.220.3(2)(a)b as construed above to determine if Claimant is entitled to PTD benefits. The

existence of non-qualifying disabilities are not to be considered against or for Claimant in

evaluating whether he satisfies § 287.220.3(2)(a)b. See id.

 Point III

 In his third point on appeal, Claimant argues the Commission erred in failing to consider

Claimant’s 2003 workers’ compensation claim,7 involving an occupational disease that resulted

from repetitive trauma, as a qualifying disability under § 287.220.3(2).

 Analysis

 Section 287.220.3(2)(a)a(ii) requires that a claimant have “a medically documented

preexisting disability equaling a minimum of fifty weeks of permanent partial disability

compensation according to the medical standards that are used in determining such compensation

which is: … A direct result of a compensable injury as defined in section 287.020[.]”

 The Commission declined to address whether Claimant’s bilateral CTS preexisting

condition met the 50-week threshold prescribed in § 287.220.3(2)(a), however, it concluded that

Claimant’s 2003 bilateral CTS does not satisfy § 287.220.3(2)(a)a(ii) because “this disability was

7
 Claimant settled with his then employer for 17.5% PPD of the left wrist and 18.6% PPD of the right wrist. A 10%
loading factor was applied. The Commission found that “at the time of the April 2016 primary injury, [Claimant’s]
permanent partial disability with respect to bilateral CTS was equal to 18.6% of the right wrist, or 32.55 weeks, and
17.5% of the left wrist, or 30.625 weeks.”

 11
not the ‘direct result of a compensable injury as defined in § 287.020,’ but rather the result of an

occupational disease as defined in § 287.067 RSMo.”

 The Fund argues that the Commission did not err in its finding that Claimant’s bilateral

CTS failed to satisfy § 287.220.3(2)(a)a(ii) because § 287.020.3, which defines the term

“injury,” provides that “injury” “shall in no case except as specifically provided in this chapter

be construed to include occupational disease in any form.” We disagree.

 “Workers’ compensation law is entirely a creature of statute, and when interpreting the

law the court must ascertain the intent of the legislature by considering the plain and ordinary

meaning of the terms and give effect to that intent if possible.” Templemire v. W & M Welding,

Inc., 433 S.W.3d 371, 381 (Mo. banc 2014) (quoting Hayes v. Show Me Believers, Inc., 192

S.W.3d 706, 707 (Mo. banc 2006)). We must strictly construe the provisions of workers’

compensation statutes. Section 287.800.1; see also Cosby, 579 S.W.3d at 206.

 While we acknowledge the referenced language in § 287.020, we also consider §

287.067, which provides the definition for “occupational disease” and requirements to trigger the

Fund’s liability for an injury by occupational disease. Specifically, § 287.067.2 provides that

“[a]n injury or death by occupational disease is compensable only if the occupational exposure

was the prevailing factor in causing both the resulting medical condition and disability.”

(Emphasis added). It further provides that “[a]n injury due to repetitive motion is recognized as

an occupational disease for purposes of this chapter.” § 287.067.3. Here, the plain language of §

287.220.3(2)(a)a(ii) requires only a “compensable injury.” An occupational disease that meets §

287.067’s definition and requirements is a compensable injury under the workers’ compensation

law. See generally Peters v. Treasurer of Missouri as Custodian of Second Injury Fund, 404

S.W.3d 322, 325–26 (Mo. App. E.D. 2012). Thus, because § 287.067 specifically recognizes

 12
occupational diseases as compensable injuries, we find that § 287.220.3(2)(a)a(ii) refers

generally to “a compensable injury” and does not exclude a specific category of injury.

 Therefore, the Commission erred in finding that Claimant’s bilateral CTS did not satisfy

§ 287.220.3(2)(a)a(ii). Because the Commission only made a determination as to whether

Claimant’s bilateral CTS satisfied § 287.220.3(2)(a)a(ii), we remand to the Commission with

instructions to determine if Claimant’s 2003 bilateral CTS satisfies the entire criteria set forth in

§ 287.220.3.

 All points granted.

 IV. Conclusion

 For the foregoing reasons, the Commission’s decision is reversed, and the case is

remanded for further proceedings consistent with this Opinion.

 _______________________________
 Colleen Dolan, Judge

Mary K. Hoff, C. J., concurs.
Robert M. Clayton III, J., concurs.

 13