

# Missouri Court of Appeals

## Southern District

### Division Two

IN THE INTEREST OF:⠀⠀⠀⠀⠀⠀⠀⠀⠀)
R.J.M., JR., a Minor,⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
R.S.M., Natural Father,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀No. SD35714
⠀⠀⠀⠀⠀⠀Appellant,⠀⠀⠀⠀⠀⠀⠀)⠀⠀Filed: March 26, 2019
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
MISSOURI DEPARTMENT OF SOCIAL⠀)
SERVICES, CHILDREN'S DIVISION,⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Respondent.⠀⠀⠀⠀⠀⠀)

### APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY

Honorable R. Tiffany Yarnell, Associate Circuit Judge

## APPEAL DISMISSED

R.S.M. ("Father") appeals the amended judgment of the Juvenile Division of the Circuit Court of Taney County (the "trial court"), terminating his parental rights to R.J.M. Jr. ("Child").[1] Father's six points on appeal are in substantial violation of Rule 84.04,[2] and preserve nothing for review. On that basis, Father's appeal is dismissed.[3]

---

[1] R.J.M. is an Indian Child as defined by the Indian Child Welfare Act.

[2] All rule references are to Missouri Court Rules (2018).

[3] All motions filed in this appeal are denied.

**Factual and Procedural Background**

On January 29, 2015, Child (who was approximately 6 months old) came into care of the Juvenile Division due to unsanitary living conditions in Father's residence. The house Child was living in was filled with feces, ants, roaches, trash, and rotting food. The house also had no utilities, broken windows, and leaking fluids from a refrigerator. Written service agreements directed that Father was to provide Child with a safe, healthy, and clean living environment, along with utilities. The original goal for Father was reunification with Child, which was later changed to adoption. On February 20, 2017, the Children's Division of the Missouri Department of Social Services ("Children's Division") filed a petition to terminate Father's parental rights.[4]

On April 18, 2018, a termination hearing was held. Father did not testify. The evidence adduced at hearing was that Father was provided extensive services for more than three years, including psychological assessments, counseling, parent aides, supervised visitation, and housekeeping assistance. Father still had not rectified the issues that brought Child into care, and there was no evidence that Father would do so in the foreseeable future.

Father was found to have learning difficulties and an IQ in the borderline range. He was diagnosed with depressive disorder and permanent borderline intellectual functioning. Father could not be certified as meeting minimum parenting standards, based partly on Father's continued denial there were problems and his minimization of the issues that had brought Child into care.

A representative of the Cherokee Nation testified that Children's Division had engaged in "active efforts" to reunify Child with Father, but those efforts had failed; that if Child was returned to Father, "it would likely result in serious emotional or psychological damage to the child"; and he recommended that Father's parental rights be terminated as it was in the best interest of Child.

---

[4] Mother's rights were also terminated, but she is not a party to this appeal.

The trial court terminated Father's parental rights, pursuant to section 211.447.5(2) (abuse or neglect), and section 211.447.5(3) (failure to rectify).[5] The trial court also found that it was in the best interest of Child to terminate Father's parental rights. Pursuant to the Indian Child Welfare Act, the trial court found that continued custody of Child by Father would likely result in serious emotional or physical damage to Child.

Father filed a "Motion for New Trial or in the Alternative Amended Findings," which was denied. This appeal followed.

## Rule 84.04 and Briefing Deficiencies

Father's brief is not in substantial compliance with Rule 84.04, and runs afoul of controlling principles of appellate review. We note the most grievous of Father's briefing violations.[6]

### *Statement of Facts*

Rule 84.04(c) requires that an appellant present the reviewing court with "a fair and concise statement of the facts relevant to the questions presented for determination without argument." This requirement reflects the controlling principle of review that "[a]n appellant may not simply recount his or her version of the events, but is required to provide a statement of the evidence in the light most favorable to the judgment."[7] Rather, "[t]he function of the appellant's brief is to

---

[5] All references to statutes are to RSMo Cum.Supp. 2017, unless otherwise indicated.

[6] We make no effort at mentioning every violation in Father's brief (there are many). However, our disposition is warranted based solely on the identified deficiencies.

[7] *In re Marriage of Smith*, 283 S.W.3d 271, 273 (Mo.App. E.D. 2009). *See also Evans v. Groves Iron Works*, 982 S.W.2d 760, 762 (Mo.App. E.D. 1998) ("However, faithful compliance with the rule also serves another salutary purpose. It should assist appellant's counsel in evaluating whether the appeal should be pursued at all. . . . If counsel will objectively prepare a statement reciting only those facts that tend to support [the decision below], it will often be obvious that the appellate court will have no choice but to affirm . . . and that there is no point in pursing the appeal further.").

explain to the court why, despite the evidence seemingly favorable to the respondent, the law requires that appellant must prevail." ***Hoer v. Small***, 1 S.W.3d 569, 571 (Mo.App. E.D. 1999).

Father's statement of facts (presaging 6 points and twenty-five pages of evidence-heavy argument) is *perhaps* "concise" at three pages in length. However, "the statement of facts are to include (at least) all those facts utilized in the argument section of a brief[]"[8]—Father's three pages of "facts" do not meet that requirement. Even within Father's "concise" presentation, argument masquerades as fact (this is prohibited).[9] Our courts have observed that this manner of failure is "often viewed" as an admission that if all (and only) the relevant facts were before the reviewing court, "the appellant would surely lose."[10]

### Points Relied On

Rule 84.04(d) requires that each point relied on "be in substantially the following form: "'The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*].'" None of Father's six points relied on belie even a token effort at compliance with this mandatory "erred in/because/in that" formula.[11] "Given that a

---

[8] ***Mason v. State***, 563 S.W.3d 166, 168 n.2 (Mo.App. S.D. 2018).

[9] For instance, Father presents this Court with the following "facts": (1) "Father agreed to babysit a data-gathering computer shaped like a newborn infant, even though his living, human child was over three years old, with very different parenting needs than a newborn at that time[]"; (2) "Although the trial [c]ourt found that the State offered Father extensive services, the State provided virtually no services designed to remedy the initial and consistent concern of its workers: home cleanliness[]"; (3) "After Ms. Green recommended changing the permanency plan to termination and adoption in September 2015, the State provided primarily evidence-gathering services, to be used eventually to terminate Father's parental rights. The State provided some services, but it did not provide services reasonably calculated to alleviate the problem that lead [sic] to removal of the child."

Appellate counsel is reminded (and directed) that argument goes in the "argument" section, not in the "facts" section.

[10] ***Kenneth Bell and NEZ, Inc. v. Baldwin Chevrolet Cadillac, Inc.***, 561 S.W.3d 469, 473 (Mo.App. S.D. 2018) (internal quotations and citation omitted).

[11] Five of Father's six points relied on are not even complete sentences. (To the extent it must be said, and apparently it must, appellate proceedings are not an informal matter).

template is specifically provided for in Rule 84.04(d)(1), appellants simply have no excuse for failing to submit adequate points relied on." ***Scott v. King***, 510 S.W.3d 887, 892 (Mo.App. E.D. 2017). Further, Rule 84.04(d)(5) requires that "[i]mmediately following each 'Point Relied On,' the appellant . . . ***shall include a list of cases***, not to exceed four, ***and*** the constitutional, statutory, and regulatory provisions or other authority upon which that party principally relies." (Emphasis added). Father's Points IV, V, and VI cite no cases—nor do they indicate that such cases were unavailable, or any other reason for the absence of such authority.

---

I. TRIAL COURT'S JUDGMENT MUST BE REVERSED, BECAUSE IT IS BASED ON JUDICIAL NOTICE OF UNFORMULATED ORDERS THAT DID NOT COMPLY WITH RSMO § 211.183 AND CONTAINED STATUTORILY-INADMISSIBLE EVIDENCE.

II. THE COURT'S JUDGMENT MUST BE REVERSED, BECAUSE IT LACKED FINDINGS OF FACT REQUIRED BY BOTH MISSOURI AND UNITED STATES LAW.

III. TRIAL COURT'S JUDGMENT MUST BE REVERSED, BECAUSE IT IS BASED ON ERRONEOUS YET NECESSARY FINDINGS OF FACT, LACKING SUFFICIENT EVIDENCE OR AGAINST THE WEIGHT OF THE EVIDENCE, SPECIFICALLY AS TO THE STATE'S PROVISION OF ACTIVE EFFORTS TO REUNIFY.

IV. TRIAL COURT'S JUDGMENT MUST BE REVERSED, BECAUSE IT IS BASED ON ERRONEOUS YET NECESSARY FINDINGS OF FACT, LACKING SUFFICIENT EVIDENCE OR AGAINST THE WEIGHT OF THE EVIDENCE, SPECIFICALLY THAT FATHER FAILED TO RECTIFY AND THAT FUTURE SERVICES WOULD NOT LEAD TO REUNIFICATION.

V. TRIAL COURT'S JUDGMENT MUST BE REVERSED, BECAUSE IT IS BASED ON ERRONEOUS YET NECESSARY FINDINGS OF FACT, LACKING SUFFICIENT EVIDENCE OR AGAINST THE WEIGHT OF THE EVIDENCE, SPECIFICALLY THAT FATHER FAILED TO PAY THE ENTIRE COST OF THE CHILD'S CARE, DESPITE HAVING THE ABILITY TO DO SO.

VI. TRIAL COURT'S JUDGMENT MUST BE REVERSED, BECAUSE IT IS BASED ON ERRONEOUS YET NECESSARY FINDINGS, LACKING SUFFICIENT EVIDENCE OR AGAINST THE WEIGHT OF THE EVIDENCE, BEYOND A REASONABLE DOUBT THAT CONTINUED CUSTODY OF THE CHILD BY FATHER WOULD LIKELY RESULT IN SERIOUS EMOTIONAL OR PHYSICAL DAMAGE TO THE CHILD.

Even if these defects were not fatal (and they are), a goodly portion of Father's points and argument commingle substantial-evidence and against-the-weight-of-the-evidence challenges. These are separate challenges—they may not be commingled in a single point relied on, and may certainly not be combined in the argument section of a single point. *Ivie v. Smith*, 439 S.W.3d 189, 199 n.11 (Mo. banc 2014). In this vein, Father's argument wholly fails to follow the mandatory (and *separate*) analytical sequences as set forth in *Houston v. Crider*, 317 S.W.3d 178, 186-87 (Mo.App. S.D. 2010), for substantial evidence and against the weight of the evidence:

A not-supported-by-substantial-evidence challenge requires completion of three sequential steps:

(1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;

(2) identify all of the favorable evidence in the record supporting the existence of that proposition; and,

(3) demonstrate why that favorable evidence, when considered along with the reasonable inferences drawn from that evidence, does not have probative force upon the proposition such that the trier of fact could not reasonably decide the existence of the proposition.

On the other hand, an against-the-weight-of-the-evidence challenge requires completion of four sequential steps:

(1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;

(2) identify all of the favorable evidence in the record supporting the existence of that proposition;

(3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,

(4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

6

*Id.* at 187. "[A]dherence to this analytical formula is mandatory not just because this Court says so, but because it reflects the underlying criteria necessary for a successful challenge—the absence of any such criteria, even without a court-formulated sequence, dooms an appellant's challenge." ***Nichols v. Belleview R-III Sch. Dist.***, 528 S.W.3d 918, 928 (Mo.App. S.D. 2017).

The corpus of Father's briefing defects, as identified *supra*, doom his appeal. Father's appeal is dismissed.

WILLIAM W. FRANCIS, JR., P.J. - OPINION AUTHOR

DANIEL E. SCOTT, J. - CONCURS AND FILES SEPARATE CONCURRING OPINION

MARY W. SHEFFIELD, J. – CONCURS



# Missouri Court of Appeals
## Southern District
### Division Two

IN THE INTEREST OF:    )
R.J.M., JR., a Minor,     )
             )
R.S.M., Natural Father,    )
             )
    Appellant,   )  No. SD35714
             )  Filed:  March 26, 2019
  vs.        )
             )
MISSOURI DEPARTMENT OF SOCIAL )
SERVICES, CHILDREN'S DIVISION, )
             )
    Respondent.  )

## CONCURRING OPINION

Father's brief is fatally flawed, but we would affirm on the merits in any event.  The record fully supports the propriety of termination, not just under Missouri law, but also the Indian Child Welfare Act.  The Cherokee Nation representative was involved in the case nearly two years.  He testified without objection as "a qualified ICWA expert witness," and summarized ICWA requirements for "active efforts vs. reasonable efforts" as basically

> that the case management agency is required to be more actively involved and engaging with the family….  Let's say, for example, if they request or they come to [the caseworker] and say I need a drink of water, you need to go above and beyond saying there's a water fountain right outside the door.  You need to grab them by the hand, take them to that water fountain and actually push the button so the water comes out.

He further testified that the Children's Division had undertaken active efforts to reunify Father and Child, but those efforts have proven unsuccessful, and termination was in Child's best interest beyond a reasonable doubt.  I concur.

DANIEL E. SCOTT, J.  — CONCURRING OPINION AUTHOR