

# Missouri Court of Appeals

## Southern District

### Division One

IN THE INTEREST OF:  )
J.X.B. and J.M.H., Minors,  )
  )
BUTLER COUNTY JUVENILE OFFICE,  )
  )  No. SD36633 and SD36634
Respondent,  )  Consolidated
  )  Filed:  October 19, 2020
vs.  )
  )
J.E.B., Natural Father,  )
  )
Appellant.  )

APPEAL FROM THE CIRCUIT COURT OF BUTLER COUNTY

Honorable Thomas D. Swindle, Judge

**AFFIRMED, AND REMANDED WITH INSTRUCTIONS**

In five points relied on, J.E.B. ("Father") appeals the judgments of the Juvenile Division of the Circuit Court of Butler County (the "trial court"), which terminated his parental rights to his children J.X.B. and J.M.H. (the "Children").[1]  Father fails to demonstrate reversible error in any of his five points, and we therefore deny the same and affirm the judgments of the trial court.  We remand solely for the trial court's resolution of the "Motion for Approval of Attorney's Fees" filed by Father's counsel.

---

[1] The individual cases for each child were consolidated for this appeal.  A petition was filed on behalf of each child and a separate judgment (collectively "judgments") was entered with respect to each child.

**Factual and Procedural Background**

We recite the evidence and inferences in the light most favorable to the trial court's judgment. *See* ***S.S.S. v. C.V.S.***, 529 S.W.3d 811, 815 (Mo. banc 2017). Additional material is included as necessary for context.

J.M.H. came into the custody of the Missouri Department of Social Services, Children's Division) ("the Children's Division") in January 2017, when J.M.H.'s mother tested positive for methamphetamines. J.X.B. came into the custody of the Children's Division in August 2017, as the result of a newborn crisis assessment, and due to J.X.B.'s mother having multiple involuntary terminations of her parental rights to other children in preceding years.[2]

Father entered Written Service Agreements ("WSAs") regarding J.M.H. in June 2017, and J.X.B. in April 2018. As relevant here, the WSAs required Father to abstain from drug abuse or criminal activity; maintain employment/disability benefits; provide a safe home for the Children; not associate with people having criminal backgrounds; not allow anyone to reside in his home without approval from Children's Division; participate in counseling and mental health services as required; take prescription drugs as prescribed, and under the supervision of Children's Division; demonstrate understanding of the Children's physical and emotional needs; keep Children's Division representative apprised of his residence, contact information, and employment; sign all required releases; and be available for home visits from Children's Division representatives.

---

[2] J.M.R. is the biological mother of J.M.H., and R.D.F.B. is the biological mother of J.X.B., in the termination of parental rights petitions filed in the trial court below, and their parental rights were also terminated as part of these proceedings. As neither J.M.R. nor R.D.F.B. is a party to this appeal, explicitly, we make no decision addressing the trial court's termination of their parental rights to their respective children and refer to evidence about J.M.R. and R.D.F.B. only as is necessary to address Father's appeal.

On July 2, 2019, petitions to terminate parental rights were filed by the Children's Division. The petitions asserted, in relevant part, that the Children had been abandoned for a period of six months, Father continued to neglect the Children; Father had a permanent mental condition such that there is no reasonable likelihood that the condition can be reversed and which renders him unable to knowingly provide the Children with the necessary care, custody and control; Father had a history of chemical dependency; Father had failed to provide the Children with adequate food, clothing, shelter or education; that the Children had been in care for a period of time exceeding one year; Father had failed to substantially comply with his WSAs; and it would be in the best interest of the Children for Father's parental rights to be terminated.

A hearing on the termination of Father's parental rights was held on November 4, 2019.[3] Amber Tyler ("Tyler"), the caseworker for the Children at the time of the hearing, testified while Father did complete some assessments, he did not follow through with the requirements of the WSAs. Father did not complete parenting classes, drug treatment, or counseling, and did not stay on his required medication. Father initially refused inpatient drug treatment on the basis that it reminded him of his time spent in prison, and his time spent in a juvenile facility as a teenager. Thereafter, Father did enter an inpatient drug program, but left after a few weeks, claiming he did not agree with the program's policies.

Tyler testified that on October 23, 2018 and October 25, 2018, Father underwent a psychological evaluation with Dr. John Wood ("Dr. Wood"). Doctor Wood diagnosed Father with unspecified schizophrenia spectrum and other psychotic disorder, post-traumatic stress disorder, mild stimulant use disorder (amphetamine-type substance), and mild cannabis use disorder. Doctor Wood recommended Father undergo counseling and therapy to improve Father's behavior

---

[3] The trial court took judicial notice of the pleadings, orders, judgments and reports in the underlying abuse and neglect cases for the Children in juvenile Case Nos. 17BT-JU00013 and 17BT-JU00136.

and emotional skills with regard to care of the Children; abstain from alcohol and other mood-altering substances; and to complete a psychiatric evaluation for medication to assist and regulate Father's emotions.

Tyler stated that as a result of Dr. Wood's findings, a third WSA was provided for Father in November 2018. In addition to the goals previously outlined in his first two WSAs, Father agreed to complete family counseling with the Children; participate in individual therapy; undergo a psychiatric evaluation for medication placement; and avoid alcohol or other mood-altering substances. Father again did not follow through with any of these requirements. Although Father did schedule therapy sessions with Dr. Wood, he failed to attend the first three scheduled sessions, and Dr. Wood's office accordingly canceled the remaining sessions. Father scheduled parenting classes through CASA, but missed the majority of those classes. He (again) scheduled parenting classes, this time at Recycling Grace, but that organization terminated Father's participation due to his inappropriate behavior.[4] After his psychiatric evaluation, Father was prescribed medication for his mental health issues, but failed to take that medication. Rather, Father admitted to Tyler that he was using methamphetamines, IV drugs, and "ice" to "cop[e]," and it was determined Father had a chemical dependency.

Tyler testified that Father was present for only one out of eleven Family Support Team meetings for J.M.H., and only one out of six Family Support Team meetings for J.X.B. Father also failed to keep her updated on his contact information.

---

[4] As a result of Father's inappropriate behavior, Recycling Grace not only terminated Father's participation, but also (according to the record) stopped offering parenting classes to men.

Tyler stated that Father had only seen J.M.H. for two bonding visits[5] since J.M.H. came into care. Father did not receive additional visits with J.M.H. because of his failure to provide clean drug screens. J.X.B. had no emotional ties to Father due his being taken into care at birth. Father was not allowed visits with J.X.B., again due to his failure to provide clean drug screens. In three years, Father had only one clean drug test.

Father received SSI benefits, but provided no financial or in-kind support to the Children, although required to do so by his WSAs.

Tyler stated she conducted a home visit a week prior to hearing. At that time, Father was living in a two-bedroom home, and his roommate did not have custody of her own children because of her own extensive history with Children's Division. Tyler testified that this made the home inappropriate for the Children. During the time the Children were in care, Father struggled with homelessness. Tyler testified that during this visit, Father displayed negative emotions and behaviors toward her to such an extent that she feared for her safety, and requested that the Children's Division not require her to visit Father again by herself.

Tyler recommended termination of Father's parental rights to the Children, as both children needed "good, healthy forever homes," and "experienced, focused parental care" to address the Children's special needs.

The guardian ad litem for J.M.H. testified and opined it was in the best interest of J.M.H. that Father's parental rights be terminated. The guardian ad litem for J.X.B. did not testify, but was to submit a report to the trial court.[6]

---

[5] On August 23, 2018 and September 3, 2018, Father and J.M.H. attended a bonding assessment. Father did not take responsibility for his current situation with the Children, but instead blamed his girlfriend. Father stated the Children's Division had pitted him against his girlfriend for several years. When asked if Children's Division was to blame for his drug use and his girlfriend getting arrested, Father became upset and threatened to leave.

[6] We cannot refer to the report of the guardian ad litem for J.X.B. as it was not filed with the record on appeal.

5

On January 6, 2020, the trial court filed its judgments terminating Father's parental rights to the Children on multiple statutory grounds. The trial court also found that termination of Father's parental rights was in the best interest of the Children.

On February 5, 2020, Father filed a "Motion to Reconsider, Vacate, Alter, or Amend Judgment or, in the Alternative, Motion for New Trial," which the trial court denied on March 2, 2020. This appeal followed.

Father challenges the trial court's judgment in five points on appeal. Father's first four points argue, respectively, that the trial court's judgments were against the weight of the evidence as to trial court findings that: (1) Father "abandoned both children"; (2) "pursuant to section 211.447.5(2)(d),[7] [Father] repeatedly and/or continuously failed to provide the Children with adequate food, clothing, shelter or education . . . or other care and control necessary for the Children's physical, mental or emotional health and development"; (3) "[Father] has a mental condition . . . rendering him unable to knowingly provide the child[ren] with the necessary care, custody and control, pursuant to section 211.447.5(2)(a)"; and (4) "[Father] has a chemical dependency which prevents him from consistently providing the necessary care, custody and control of the child [sic][.]" Father's fifth point argues: "As the trial court erroneously found that grounds for termination did exist, it then made findings as to whether such a termination supported the children's best interests." For ease of analysis, we combine Father's Points I through IV.

**Standard of Review**

> This Court reviews whether there was clear, cogent, and convincing evidence to support a statutory ground for terminating parental rights . . . under the standard of review set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976):

---

[7] All references to statutes are to RSMo Cum.Supp. 2014, unless otherwise indicated.

The trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong.

On appeal, Father contends the circuit court's conclusions . . . are against the weight of the evidence. Appellate courts act with caution in exercising the power to set aside a decree or judgment on the ground that it is against the weight of the evidence. A claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment. The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong. When reviewing the record in an against-the-weight-of-the-evidence challenge, this Court defers to the circuit court's findings of fact when the factual issues are contested and when the facts as found by the circuit court depend on credibility determinations. A circuit court's judgment is against the weight of the evidence only if the circuit court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment. When the evidence poses two reasonable but different inferences, this Court is obligated to defer to the trial court's assessment of the evidence. This Court rarely has reversed a trial judgment as against the weight of the evidence[.]

*S.S.S.*, 529 S.W.3d at 815–16 (internal quotations and citations omitted).

## Analysis

### *Rule 84.04: Deficiencies Common to All of Father's Points Relied On*[8]

Rule 84.04(d) requires that each point relied on "be in substantially the following form: "'The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*].'" None of Father's five points relied on reflect even a token effort at compliance with this mandatory "erred in/because/in that" formula. "Given that a template is specifically provided for in Rule 84.04(d)(1), appellants simply have no excuse for

---

[8] All rule references are to Missouri Court Rules (2017).

failing to submit adequate points relied on." ***Scott v. King***, 510 S.W.3d 887, 892 (Mo.App. E.D. 2017). This defect is fatal to Father's appeal, as "[a] point relied on that fails to comply with Rule 84.04(d) preserves nothing for appeal[,]"[9] and "[t]he Court will not consider it." ***Piatt v. Indiana Lumbermen's Mutual Insurance Company***, 461 S.W.3d 788, 794 n.4 (Mo. banc 2015).

### *Argument Section*

"All factual assertions in the argument shall have specific page references to the relevant portion of the record on appeal, i.e., legal file, transcript, or exhibits." Rule 84.04(e). Father's argument section seems to treat this Rule as a recommendation, rather than a mandatory prerequisite to relief on appeal. Pages of evidence-heavy argument blithely proceed without citation to the record. We count four pages (of twenty-one comprising Father's argument section) containing *any* citation to the transcript—even there, the purpose seems to reflect emphasis, not compliance. Citations to exhibits are more frequent, but still insufficient to meet the requirement of Rule 84.04(e).

"We would have to do [Father]'s work to know if the record supports [his] arguments. We cannot sift [the record] for that purpose or to remedy [Father]'s violation without becoming a *de facto* advocate, which we cannot do." ***Customer Eng'g Services v. Odom***, 573 S.W.3d 88, 91 (Mo.App. S.D. 2019) (internal quotations and citations omitted). Father's "failure to tie his alleged claims of legal error to a specific factual matter from the record with specific citations[] renders his point[s] unreviewable." ***Jones-El v. Lombardi***, 506 S.W.3d 355, 356 (Mo.App. S.D. 2016).

---

[9] ***Fifth Third Bank v. Estate of Shaw-Schneller***, 586 S.W.3d 887, 888 (Mo.App. S.D. 2019).

*Preservation Status*

"For each claim of error, the argument shall also include a concise statement describing whether the error was preserved for appellate review; if so, how it was preserved[.]" Rule 84.04(e). In no instance does Father's brief attempt at complying with this requirement. An appellate court's role is not to "demonstrate [a claim] is properly preserved for appellate review[,]" and "an appellant's failure to ascertain the preservation status of his or her claims . . . drastically undercuts the efficacy of appellant's arguments[.]"[10] *Carruthers v. Serenity Mem'l Funeral & Cremation Serv., LLC*, 576 S.W.3d 301, 305 (Mo.App. E.D. 2019) (internal quotation and citation omitted).

*Father's Points I- IV: Against-the-Weight-of-the-Evidence Challenges*

Father's Points I-IV all argue (in various respects) that the trial court's judgments were against the weight of the evidence.

Our Supreme Court explained the significant obstacles to a successful against-the-weight-of-the-evidence challenge in *Ivie v. Smith*, 439 S.W.3d 189, 205-06 (Mo. banc 2014):

> Appellate courts act with caution in exercising the power to set aside a decree or judgment on the ground that it is against the weight of the evidence. A claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment. In other words, 'weight of the evidence' denotes an appellate test of how much persuasive value evidence has, not just whether sufficient evidence exists that tends to prove a necessary fact. *See White v. Dir. of Revenue*, 321 S.W.3d 298, 309 (Mo. banc 2010) (stating that 'weight' denotes probative value, not the quantity of the evidence). The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong.
>
> When reviewing the record in an against-the-weight-of-the-evidence challenge, this Court defers to the circuit court's findings of fact when the factual issues are contested and when the facts as found by the circuit court depend on credibility determinations. A circuit court's judgment is against the weight of the evidence

---

[10] Such failure "task[s] this court with assuming the role of advocate[,]" which we will not do. *Marck Indus., Inc. v. Lowe*, 587 S.W.3d 737, 745 (Mo.App. S.D. 2019).

only if the circuit court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment. When the evidence poses two reasonable but different conclusions, appellate courts must defer to the circuit court's assessment of that evidence.

> ***This Court defers on credibility determinations when reviewing an against-the-weight-of-the-evidence challenge because the circuit court is in a better position to weigh the contested and conflicting evidence in the context of the whole case***. The circuit court is able to judge directly not only the demeanor of witnesses, but also their sincerity and character and other trial intangibles that the record may not completely reveal. Accordingly, this standard of review takes into consideration which party has the burden of proof and that the circuit court is free to believe all, some, or none of the evidence offered to prove a contested fact, and the appellate court will not re-find facts based on credibility determinations through its own perspective. This includes facts expressly found in the written judgment or necessarily deemed found in accordance with the result reached. Rule 73.01(c)[.] Evidence not based on a credibility determination, contrary to the circuit court's judgment, can be considered in an appellate court's review of an against-the-weight-of-the-evidence challenge.

*Ivie*, 439 S.W.3d at 205–06 (internal quotations and citations omitted) (emphasis added).

These principles are reflected in the four-step analytical sequence set out in ***Houston v. Crider***, 317 S.W.3d 178 (Mo. App. S.D. 2010):

> (1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
>
> (2) identify all of the favorable evidence in the record supporting the existence of that proposition;
>
> (3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,
>
> (4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

*Id.* at 187.

Father's Point I argument begins, in relevant part, by reciting (without citation) ***Houston***'s analytical sequence, and then resolving that "[i]n support of this and subsequent points, . . . [f]or

10

clarity, these [factors] will be so enumerated." While Father's brief makes *some*[11] cosmetic approaches at such "enumerat[ion]" in Points I, III, and IV, his efforts land well short of substantive compliance with ***Houston***'s requirements.[12] Fatally, Father's arguments attendant to Points I-IV fail to account for the trial court's fact-findings and credibility determinations (explicit and implicit).[13]

In reviewing an against-the-weight-of-the-evidence challenge, we do not consider (and it is incumbent upon appellant not to rely on) evidence that was not credited by the trial court. ***Houston***, 317 S.W.3d at 186–87; ***White***, 321 S.W.3d at 307–08. Notably, in an against-the-weight-of-the-evidence challenge, this Court considers certain evidence contrary to the judgment in the third and fourth steps of the analytical sequence, pursuant to ***Houston***—*i.e.*, where the appellant demonstrates: (1) the evidence was offered by a party with no burden of proof as to the ultimate issue for which that evidence was offered; (2) the efficacy of that evidence is not based on a credibility determination; and (3) the evidence is uncontested, uncontradicted, and not disputed in any manner. ***White***, 321 S.W.3d at 307–08. Where these elements are satisfied, there is no credibility determination for the trial court to make—rather, the only task for the trial court

---

[11] Father's Point II argument—purportedly an independently sufficient basis for reversal—makes the following attempt at satisfying ***Houston***'s mandatory analytical sequence for an against-the-weight-of-the-evidence challenge: "Much of the evidence presented at trial, for or against such a failure to provide is the same as presented hereinabove in Point Relied on No. 1. All such information and argument is incorporated herein as if more fully set forth by this reference." To be clear, "[t]he use of incorporation by reference is ***not*** sufficient in the argument section of a Brief." ***Hill v. Ashcroft***, 526 S.W.3d 299, 317 (Mo.App. W.D. 2017) (internal quotation and citation omitted) (emphasis added); ***Sugar Ridge Properties v. Merrell***, 489 S.W.3d 860, 873 n.8 (Mo.App. S.D. 2016).

[12] We make no effort at an exhaustive recitation of the analytical and rule-based deficiencies in Father's brief.

[13] For example, nine pages of Father's brief (and the argument attendant to two points relied on) reference purported "bonding" between Father and the Children. While Father's brief presents us with evidence (as though credited) that Father has a strong bond with J.M.H., the trial court's judgment specifically found that Father "has not bonded with [J.M.H.]" Even if this specific finding were absent—and not merely ignored by Father's brief—Rule 73.01 directs: "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached."

11

(and this Court) is to determine the legal effect of such evidence. *See id.*; *see also*, ***Ivie***, 439 S.W.3d at 205–207.

In Father's Points I-IV, against-the-weight-of-the-evidence challenges, his argument relies on evidence contrary to the trial court's judgment. He does not attempt—or succeed—in demonstrating that such evidence was: (1) subject to the trial court's fact-finding role, and was credited by the trial court; or (2) contrary evidence embraced by ***White***'s prerequisites. ***Houston***'s analytical sequence is mandatory because it reflects the underlying criteria necessary for an appellant to succeed on appeal. Father's failure to comply with ***Houston***'s mandates renders his argument "analytically useless and provides no support for his challenge." ***In Interest of N.L.W.***, 534 S.W.3d 887, 899 (Mo.App. S.D. 2017) (internal quotation and citation omitted). This failure "dooms [Father's] challenge[s]." ***Interest of R.J.M.***, 571 S.W.3d 219, 224 (Mo.App. S.D. 2019) (internal quotation and citation omitted). Father's Points I-IV are accordingly denied.

### Father's Point V: Trial Court's Best Interest Finding

Father's Point V *in toto* states:

> As the trial court erroneously found that grounds for termination did exist, it then made findings as to whether such a termination supported the children's best interests pursuant to RSMo §211.447.6. The trial court erred in finding by a preponderance of the evidence that termination supported the children's best interest. Evidence showed the Appellant and J.M.H. demonstrated a very strong bond and that J.M.H. had no prospective adoptive home, though the caseworker had been looking. Appellant was never permitted to meet J.X.B., therefore the two do not share a bond, J.X.B. was in a pre-adoptive home with biological half-siblings who had been adopted by the placement providers.

As discussed more fully, *supra*, this point reflects no attempt at compliance with Rule 84.04(d). Moreover, Rule 84.04(d)(5) directs that "[i]mmediately following each 'Point Relied On,' the appellant, relator, or petitioner ***shall*** *include a list of cases*, not to exceed four, and the constitutional, statutory, and regulatory provisions or other authority upon which that party

12

principally relies." (Emphasis added). No cases follow Father's Point V—Father does not "indicate that such cases were unavailable, or any other reason for the absence of such authority." *See **Interest of R.J.M.**, 571 S.W.3d at 223-24. "Failure to cite relevant authority supporting the point or to explain the failure to do so preserves nothing for review." **Carruthers**, 576 S.W.3d at 305 (internal quotations and citations omitted).

> The substance of the argument attendant to this point is as follows:

> It cannot be denied that Appellant shares no bond with J.X.B. as Appellant was never given the opportunity to create a bond with him. It appeared from the testimony that J.X.B. is currently placed in a stable, loving, familial environment where his goal of permanency through adoption can be achieved, however that does not necessarily mean that termination is in his best interests. Appellant is the biological father of J.X.B. and is also capable of providing J.X.B. with a stable, loving, familial home with his sister J.M.H. which would also support his best interests.

"Merely stating what errors are, without also stating why they are errors, neither complies with the rule nor preserves anything for review." **Interest of N.L.W.**, 534 S.W.3d at 898 (internal quotation and citation omitted). Father's Point V argument suffers from an even more fundamental defect: it does not "stat[e] what the errors are." *See **id**.[14] "This Court will not speculate on arguments not made because to do so would cast the court in the role of an advocate for the appellant." **Harris v. Ralls County**, 588 S.W.3d 579, 601 (Mo.App. E.D. 2019) (internal quotation and citation omitted).

---

[14] **Marck**, 587 S.W.3d at 746:

> [A]n argument must explain why, in the context of the case, the law supports the claim of reversible error. It should advise the appellate court how principles of law and the facts of the case interact. The applicable standard of review is the guidepost principle of law in considering and resolving every point relied on raised in an appeal. An argument, such as Appellants' here, untethered to that guidepost is nothing more than a collection of abstract legal conclusions unmoored from any coherent legal basis or theory upon which an appellate court can find reversible error. If a party fails to provide more than mere conclusions to support an argument, the point is considered abandoned.

(internal quotations and citations omitted).

13

Father fails to demonstrate reversible error in his Point V, and we accordingly deny the same.

### *"Motion for Approval of Attorney's Fees" by Father's Counsel*

Father's counsel filed her "Motion for Approval of Attorney's Fees" with this Court on September 28, 2020, requesting approval of her legal fees in this appeal to "be taxed as costs against the Children's Division" in the "amount of $14,225.00[,]" approximately four times the regulatory maximum. 13 C.S.R. 40-30.020(2)(B) ("For representation in an appellate court, the compensation shall not exceed three thousand five hundred dollars.").[15]

This motion was taken with the case.[16] While an appellate court is authorized to "consider the issue of attorney's fees,"[17] "it is the more appropriate province of the ***trial court*** to determine whether and in what amount fees should be awarded to court-appointed counsel[.]" ***In re S.M.F.***, 393 S.W.3d 635, 653 (Mo.App. W.D. 2013) (emphasis in original). "The trial court is better positioned to receive the arguments and evidence we currently lack, and is considered an expert

---

[15] *See* 13 C.S.R. 40-30.020(2)(A):
> Attorneys may be reimbursed, at the conclusion of the representation (i.e., the conclusion of trial or at the conclusion of any appeal, or both at the conclusion of trial and at the conclusion of appeal), for expenses reasonably incurred . . . except that if a termination of parental rights petition was filed in a separate proceeding and a duplicative termination of parental rights petition . . . was filed[,] . . . reimbursement for attorneys fees and/or expenses will not be reimbursed if those fees and/or expenses are duplicative of fees and/or expenses reimbursed in the separate termination of parental rights proceeding[.]

*See* 13 C.S.R. 40-30.020(2)(D):
> Payment in excess of any maximum amount provided in subsection (2)(B) may be made for extended or complex representation whenever the court in which the representation was rendered certifies that the amount of the excess payment is necessary to provide fair compensation and the payment is approved by the court. At any time an attorney believes that the cost of representation will surpass the limits provided for in subsection (2)(B), they must provide notice to the Division of Family Services, that they may exceed the current maximum fee[.]

[16] *Cf.*, Southern District Special Rule 14.

[17] ***Interest of A.R.B***., 586 S.W.3d 846, 867 (Mo.App. W.D. 2019).

on the question of attorney fees, even when the services were rendered for appellate work." ***In the Interest of I.K.H.***, 566 S.W.3d 629, 633 (Mo.App. S.D. 2018).

We therefore remand for the trial court's determination of this sole issue—having already denied Father's Points I-V, *supra*, we affirm the judgments of the trial court.[18]

WILLIAM W. FRANCIS, JR., J. - OPINION AUTHOR

NANCY STEFFEN RAHMEYER, P.J. - CONCURS

DANIEL E. SCOTT, J. - CONCURS AND FILES SEPARATE CONCURRING OPINION

---

[18] We have *ex gratia* reviewed what we discern to be the primary thrusts of Father's points, and observe that even without the defects in Father's brief, Father would not have prevailed in the instant appeal.



# Missouri Court of Appeals

## Southern District

### Division One

| | |
|---|---|
| IN THE INTEREST OF: | ) |
| J.X.B. and J.M.H., Minors, | ) |
| | ) |
| BUTLER COUNTY JUVENILE OFFICE, | ) |
| | ) No. SD36633 and SD36634 |
| Respondent, | ) Consolidated |
| | ) |
| vs. | ) |
| | ) |
| J.E.B., Natural Father, | ) |
| | ) |
| Appellant. | ) |

### CONCURRING OPINION

I agree that flagrant omission of rule-required record references, coupled with mere lip service to **Houston v. Crider**'s protocol, dooms Father's Point I-IV against-the-weight challenges.  I write separately to note another reason these points fail.

For each child, the juvenile officer alleged and the court found three statutory-termination grounds as to Father: § 211.447.5(1) abandonment, § 211.447.5(2) neglect, and § 211.447.5(3) failure to rectify.[1]  Father's briefs on appeal challenge only the first two statutory findings, but not failure to rectify, and indicate this was intentional and not by oversight.

---

[1] The court's findings on each of these grounds, in separately-numbered paragraphs, are drawn directly from the statutory language in § 211.447.5(1), (2), and (3) respectively.

"When the trial court finds multiple statutory grounds for termination of parental rights, in order to affirm the judgment this Court need only find that one of the statutory bases was proven and that the termination was in the best interests of the child." *In re T.R.W.*, 317 S.W.3d 167, 170 (Mo.App. 2010). "Thus, if an appellant fails to challenge each of the termination grounds found by the trial court, it is unnecessary for the appellate court to address the specific ground that is challenged." *Id.* *Accord* *Interest of K.S.*, 561 S.W.3d 399, 406 (Mo.App. 2018); *Interest of J.J.D.*, 543 S.W.3d 133, 134 (Mo.App. 2018).

Father's choice not to challenge the failure-to-rectify finding effectively moots his Points I-IV as to other termination grounds. I concur.

DANIEL E. SCOTT, J. – CONCURRING OPINION AUTHOR